UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN A. GRIFFITH,

      Plaintiff,

                                      CASE NO. 02-CV-73784

v.                                 HONORABLE DENISE PAGE HOOD

JOHN ASHCROFT,
U.S. ATTORNEY GENERAL,

      Defendant.

_____/

**MEMORANDUM OPINION AND ORDER**

**I.     INTRODUCTION**

      This matter was tried before the bench and the court makes the following findings of fact and conclusions of law based on the parties' stipulated facts, the testimony of the witnesses at trial, the trial briefs and proposed findings of facts and conclusions of law.

**II.     FINDINGS OF FACT**

      The Plaintiff John A. Griffith was born on October 27, 1949 and, at the time of the events giving rise to this claim, he was over the age of 40. Plaintiff was hired on August 26, 1984 by the Bureau of Alcohol, Tobacco and Firearms ("ATF") as a Special Agent, GS 11/12. Plaintiff was promoted in 1988 to a non-supervisory position at GS 1811-13. Prior to his employment by ATF, Plaintiff was a Special Agent with the United States Department of Health and Human Services from October 21, 1983 until August 23, 1984. Plaintiff served in the United States Army, including a tour in Vietnam. He was commissioned as a Warrant Officer in 1971 and served in the Department of Army Criminal Investigations Division for twelve years. Plaintiff served in a management capacity

1

in the Army as well as in the Army Reserves until his Army retirement in 2001.

Plaintiff has an Associate's Degree in Criminal Justice from the University of Maryland and a Bachelor of Arts Degree from Columbia College in Missouri. He earned these degrees while in the military.

When initially employed by ATF Plaintiff was assigned to the New Orleans District, where he was promoted to GS-1811-13 Tactical Operations Officer on December 12, 1985.  Plaintiff became a GS-13 in 1988.  Plaintiff requested, and ATF approved, a transfer to the Detroit Field Division where he was assigned on October 7, 1990.

Plaintiff applied for the position of Senior Operations Officer (S) under Vacancy Announcement No. 93-190. He was selected for that position on May 30, 1993 and served in that position until March 1994.  Plaintiff worked as a GS-13 Special Agent in Detroit from March 1984 until June 1996.  Plaintiff was again selected for a GS-1811-13 SOO position in 1995 and served in that position until October 1988 when he was reassigned to GS-13 Special Agent.

During his tenure of 19 years with ATF, Plaintiff has applied for at least 40 merit promotions and been denied 40 times subsequent to his 40th birthday.  (Pl.'s Proposed Findings of Fact and Conclusions of Law, at 1-2).

Plaintiff has trained agents at the ATF National Academy in Glynco, Georgia specifically in the areas of tactical and technological operations.  Plaintiff was also a trained crisis/hostage negotiator for the ATF Special Response Teams.  Plaintiff helped to develop the Detroit GREAT (Gang Resistance Education and Training) program and was used by ATF to communicate ATF's mission both to employees and the public. His involvement in this area included frequent media contact and exposure.

ATF modified its promotion process in June 1999, by establishing a Merit Promotion Board ("MPB") under ATF Delegation Order 1152.2. (Joint Ex. C and D). The MPB was authorized to make all personnel selections for GS-14 and GS-15 supervisory positions. Although the promotion process had been modified, in 1999 it still began with the issuance of a Vacancy Announcement. After the Vacancy Announcement closed, the Personnel Division referred all promotion packages to a Rating Panel regardless of the number of eligible applicants. A rotating panel of supervisory personnel certified the best candidates for the Best Qualified List (BQL), consisting of the top scoring applicants. The Rating Panels are made up of ATF employees who are at or above the grade level of the Vacancy Announcement.

The members of the Rating Panels individually compare each candidate's Knowledge, Skills and Abilities (KSAs) with the job criteria for the position in the Vacancy Announcement. The Rating Panel members also evaluate the qualifications of the applicants and note experience points based on the information in the written applications. All of this information is recorded on individual rating schedules, (Joint Ex. Q, R, Y, Z, EE, and FF), and then placed in a Ranking Schedule and submitted to the Personnel Division which computes a final rating based on the number of points awarded by each panel member. Applicants who meet or exceed the pre-determined cut-off score are listed on the Best Qualified List which is forwarded to the MPB for interviews. The MPB is required to read the applications of those who make the BQL and to conduct interviews of those applicants.

The MPB is made up of rotating panels of up to five ATF employees. The candidates on the BQL are asked a prescribed series of job and experience related questions including questions about:

Formal education, continuing education/training, evaluation, significant acting experience, Bureau Headquarters (BHQ) experience, multi-directorate experience,

3

other relevant experience, relevant awards, Knowledge, Skills and Abilities-written communication, job pluses, interview, negative information, self management, innovativeness, decisiveness, leadership, technical competence, integrity and ethics.

(Def.'s Proposed Findings of Facts and Conclusions of Law at 6 ¶ 43).  *See also* (Joint Ex. I, JJ, and RR).

Panel members take notes about the interviews and complete a worksheet that summarizes the "leadership competencies" of the candidates as "high", "average", or "low".  One panel member is designated to contact the current supervisor of each candidate and the receiving manager for the position to be filled. This information is shared during the panel's deliberations, but the panel is not bound by this information.   The panel then deliberates and chooses a selectee. During the deliberations, which may consist of more than one "round," panel members indicate their choice of candidate(s), stating the reasons for their choices, which are recorded on a deliberation worksheet. The selectee is then reviewed by various offices to discern adverse information.  After this review, the MPB Chairperson signs the promotion certificate on behalf of the MPB.

From August 1999 until November 2002, Mr. Anthony Torres was the Chairman of the MPB and he presided over the MPB for Vacancy Announcements 99-598 and B101-136CA.  Mr. David Dottin followed Torres as MPB Chairman beginning in 2002 and presided over the MPB for Vacancy Announcement B03-046.

**Vacancy Announcement 99-598** for the position of Supervisory Criminal Investigator, GS-1811-14 (Group Supervisor) at the Detroit Field Division was issued by ATF on August 11, 1999. Plaintiff and Mr. Michael Moore were the only two applicants who were listed on the BQL for this position. They were interviewed by telephone by MPB panel members Anthony Torres, Vivian Baran, Darryl McCrary and Richard Rawlins.  The Panel selected Michael Moore for the position

4

on November 17, 1999. His promotion became effective on March 26, 2000.

Michael Moore' date of birth is January 7, 1956. He was 44 years old at the time of his promotion. Plaintiff was 50 years old.

**Vacancy Announcements 00-21 and 00-155** preceded Vacancy Announcement 00-415. Vacancy Announcement 00-21 was issued on January 21, 2000 and 00-155 was issued on April 3, 2000. Philip A. Awe, Alan Jakubowski, Kevin O'Malley, Stephanie Shoemaker and Plaintiff were the five applicants for this position, under Vacancy Announcement 00-21, Division Operation Officer in the Detroit Field Office. A Rating Panel, William Mahon, Larry Cooper and David Harper, reviewed the application packages and rated each applicant.

The BQL cut off score for Vacancy Announcement 00-21 was 177. None of the five applicants achieved this score or better. Both Plaintiff and Jakubowski were rated 155. The position was re-advertised under Vacancy Announcement 00-155 on the same day Plaintiff filed a grievance alleging the Rating Panel had erred in the 00-21 rating by incorrectly assigning the points for his experience.

Alan Jakubowski, Stephanie Shoemaker and Plaintiff applied for the position under Vacancy Announcement 00-155. William Spruce, Larry Cooper and Michael Bukovac were the members of the Rating Panel for 00-155. The cut off score for the BQL was 177. No applicant made the BQL. Plaintiff scored 153 and Jakubowski scored 157. Plaintiff's grievance on Vacancy Announcement 00-21 was denied on August 10, 2000 by Deputy Assistant Director Steve Mathis. Later, it was decided to lower the cut off score for the Division Operations Office position. The score was lowered to 156 since no applicant was able to achieve the score of 177 or better. The position was re-advertised as Vacancy Announcement 00-415.

5

**Vacancy Announcement 00-415** was issued on October 22, 2000 for Division Operations Officer in the Detroit Field Office. This was a re-advertisement of the position previously advertised as Vacancy Announcements 00-21 and 00-155.   Plaintiff Griffith, Philip A. Awe and Alan Jakubowski applied for the position.  A Rating Panel, Philip Horbert, Valerie Goddard and Philip Durham, reviewed the application packages and rated each applicant.  Alan Jakubowski made the BQL with a score of 156. Plaintiff scored 132. Awe scored 130 points.

The cut off score was 156. The panel members were not aware of the cut off score when they reviewed the application packages nor were they aware the position had been previously advertised. None of the three had served on the Rating Panels for Vacancy Announcements 00-21 or 00-155. The MPB interviewed Jakubowski who was selected for the promotion which became effective on January 14, 2001.

Jakubowski's date of birth is September 28, 1967 and he was 33 years old at the time of his promotion. Plaintiff was 51.

**Vacancy Announcement B101-136CA** for Resident Agent in Charge of the Ann Arbor Field Office was announced on April 1, 2002.  Plaintiff and five other applicants were placed on the BQL for this position.  A five member MPB interviewed the applicants by telephone. The members of the MPB were Alexander Paul, Anthony Torres, Pamela A. Potaczek, Peter M. McLouth and J. Dewey Webb.  The applicants were asked the same job related questions, and notes of the interview and worksheet were completed.  The MPB selected John Felton on March 18, 2002.

John Felton's date of birth is October 25, 1959. He was 42 years old at the time of his selection; Plaintiff was 52 years old.

**Vacancy Announcement B03-046** was issued on February 28, 2003 for Division Operation

6

Officer.  Plaintiff and four others made the BQL and were interviewed by the MPB.  The MPB members were Pamela Cabell-Edelen, Nick Colucci, Gil Salinas, Adam Pierce and Michael Fitzgerald.  The interviews were conducted by telephone and each candidate was asked job related questions. Notes of the interviews were taken and a worksheet completed for each candidate. George Krappman was selected for the position on June 17, 2003.  Krappmann's date of birth is March 8, 1967. He was 36 years old at the time he was selected and Plaintiff was 53 years old.

When Plaintiff retired on January 1, 2004, at age 54 years, he was at Grade 13 Step 9. Plaintiff repaid the government $9,497.24 so that his military service would be credited toward his retirement benefits.  Plaintiff earned $105,000 at the time of his retirement.  Plaintiff received a lump sum of $18,671.04 for unused annual leave when he retired.  Plaintiff currently receives pension payments amounting to $5,600 per month.

### III.    CONCLUSIONS OF LAW

To establish a prima facie case of age discrimination, a plaintiff must establish: (1) that he is a member of a protected class, in this case that he was over 40 years of age at the time he applied for these positions; (2) that he applied for the positions in question but did not receive them; (3) that he was qualified for these positions; and (4) that a younger applicant was selected. *Ercegovic v. Goodyear Tire and Rubber Company*, 154 F. 3d 344, 351 (6th Cir. 1998)

A Plaintiff may present direct evidence of discrimination or introduce circumstantial evidence that allows an inference of discriminatory treatment. *Rowan v. Lockheed Martin Energy Systems, Inc.*, 360 F.3d 544 (6th Cir.2004).  Where there is no showing of direct evidence of age discrimination, the burden shifting analysis set forth in *McDonnell Douglas Corp. v Green*, 411 U.S. 792 (1973) is applied. Cases brought under the ADEA are analyzed using the same framework as

Title VII employment discrimination cases. *Grosjean v. First Energy Corporation*, 349 F.3d 332, 335 (6th Cir. 2003)

        **A.**      **Vacancy 99-598**

     Defendant claims that Plaintiff cannot establish a prima facie case for age discrimination in Vacancy Announcement 99-598 because the employee selected for promotion, Michael Moore was not "substantially younger" than Plaintiff. Moore is six years younger than Plaintiff and was 44 years

old when selected for promotion. Plaintiff was 50 years old. Defendant relies on *Grosjean* arguing that, "In the absence of direct evidence that the employer considered age to be significant, an age difference of six years or less…is not significant." *Id.* at 340.  Plaintiff points to no specific act of age discrimination in this promotion process.

     Plaintiff admits that the KSAs in his application were not specifically addressed to the position being sought and that he did not interview well. He also noted that this application did not reflect all of his experience and that this was the first time he had completed an application under the new promotion process.  Plaintiff alleges that Torres, a member of the MPB panel, knew his age because they had both served on a peer diversity group that met periodically over a two year period. Yet, Plaintiff presents no evidence that Torres used this knowledge, that Plaintiff was over forty years of age, to discriminate against him in the promotion process for Vacancy Announcement 99-598. Plaintiff also noted that Adam Price, his supervisor at the time, knew his age.  However, he did not know Vivian Baran and Darryl McCrary, the other interviewers involved in this MPB interview. Plaintiff also noted that the interviewers were people with whom he would be competing if promoted and that they did not want the competition, noting they "could not hold a candle to my experience."

8

Plaintiff sought advice from Anthony Torres following his failure to receive this promotion. He was told that his application was "a little light" and that he did not present himself as a good speaker in his telephone interview. Plaintiff claimed there was "buzzing" on his end of the telephone during the interview, but he did not complain about it at the time nor did he request another interview. Taking Torres' advice, Plaintiff worked to improve his written application. Plaintiff also recognized that applicants with headquarters experience were given more experience credit, although he did not agree with that. He noted that headquarters experience was not required for promotion, but that the interviewers tended to select "mirror images" of themselves and they were generally people with headquarters experience.

Applying the *McDonnell Douglas* burden shifting analysis, Plaintiff has shown that he was a member of a protected class, that he applied for a position which he did not receive, he was qualified for the position, and  he was rejected and a younger applicant was selected.

Defendant argues that they have a legitimate business reason for selecting Moore, stating that Moore was better qualified, related his KSAs to the job sought in a better fashion and performed better in the interview process.  Although Moore had substantially less experience than Plaintiff, it is undisputed that Moore's application was better organized and he related his KSAs better to the position sought. The testimony also demonstrated that he interviewed better than Plaintiff.

Plaintiff has not borne his burden of showing that the reason for the promotion decision was mere pretext for age discrimination.

### B.    Vacancy Announcements 00-21 and 00-155 and 00-415.

This next set of applications for promotion to Division Director, Detroit Field Office, presents special problems.  Vacancy Announcement 00-21 was issued on January 21, 2000 and 00-

9

51 was issued on April 3, 2000. None of the applicants for 00-21 achieved the number of points, 177, required for the BQL.

Plaintiff submitted what he believed was an improved application referencing the scope of his experience and how he believed his KSAs supported his qualification for Division Director. At the time of his submission, he was Acting Division Officer. Later, when he copied Torres on this application, Torres would remark to him that it was "cumbersome". Plaintiff's application is voluminous, but it is clear it was a response to the criticism that his earlier application was not strongly supported.

Plaintiff filed a grievance relative to the score of 155 he received from the 00-21 Rating Panel. He claimed he did not receive all the points he should have for his creditable experience. Plaintiff believed he should have received fifteen points from each member of the panel, which would have placed him above the required cut off score. He would then have become the only eligible candidate for the position.  His grievance of April 3, 2000 was denied on August 30, 2000, thirty-five days beyond the required time to resolve a grievance.

In the interim, the Division Director position was re-advertised as Vacancy Announcement 00-155. It is substantially the same Vacancy Announcement as 00-21. Plaintiff applied for the position on April 18, 2000. During this time he talked to and e-mailed Torres and his own Group Supervisor and Director because no response had been received to his grievance. He also applied under Vacancy Announcement 00-289 for the same position in June 2000. Each time, Plaintiff failed to make the BQL and was not selected for the position.  Plaintiff alleges that Larry Cooper was a member of the Rating and Ranking panel for Vacancy Announcement 00-155. Larry Cooper had been the selectee for Vacancy Announcement-96-112.  As a result of Cooper's selection, under

10

Vacancy Announcement 96-112, Plaintiff filed an EEO complaint based on age discrimination in the selection process for Vacancy Announcement 96-112.  As a result, Plaintiff believes that Cooper knew Plaintiff's age.  However, Cooper rated Plaintiff 49, Jakubowski 50 and the other applicant Stephanie Shoemaker 49.  Plaintiff was rated 51 by William Spruce and 53 by Michael Bukovac, the other members of the panel.  No applicant made the BQL for either the Vacancy Announcements 00-21 or 00-155.

Although Plaintiff had previously received "glowing ratings" from the same supervisors two years before, in July 2000 he was evaluated and in August received a "Fully Successful" ("FS") rating. About this same time, Plaintiff filed an EEO complaint regarding Vacancy Announcement 99-598.

The same position advertised as Vacancy Announcements  00-21 and 00-155 was again advertised as Vacancy Announcement 00-415. Plaintiff received fewer points because of the lower "Fully Successful" rating and did not make the BQL. The Rating and Ranking Panel for this Vacancy Announcement consisted of Phillip Durham, Valerie Goodard and Phillip Torbert.

Plaintiff claims that each member of the Rating and Ranking Panel knew his age. He had worked closely with Horbert and Horbert also knew of Plaintiff's previous non selections. Goodard is a social acquaintance of Plaintiff's wife and Durham also knew Plaintiff's wife from work settings.

Jakubowski, who was 33 years old at the time, was the one applicant who made the BQL and was selected for the position. Jakubowski had only 10 years' experience in law enforcement, with no experience in the Detroit office, but was found to be more experienced than Plaintiff, who had 30 years experience. Torres was on the Merit Promotion Board for each of the three manifestations

11

of the position advertised as Vacancy Announcement 00-415. He knew Plaintiff's age as did other members of the Board.

The first two announcements of this position the BQL cut off score was the same, 177. On these two occasions, Plaintiff scored 155 and then 153, while Jakubowski scored 156 and then 157 respectively. The third time the BQL cut off was 156. Jakubowski scored 156 and Plaintiff scored 152. Although the panel members were not aware of the cut off score nor were they aware that the position had been previously announced, no explanation was given as to why the BQL cut off score was lowered.

With respect to the three announcements for the position of Division Operation Officer at the Detroit Field Office, 00-21, 00-155, and 00-415, Plaintiff has shown that he is a member of a protected class, that he applied for a position and did not receive such position. There is an argument to be made that Plaintiff has not shown he was qualified for the position because he did not make the BQL cut off score, (not even the BQL for 00-415), on any of his applications. Plaintiff did not achieve a score on 00-21 or 00-155 that would have satisfied the lowered BQL on 00-415. While the court finds the lack of a good explanation for reducing the score problematic, Plaintiff on no occasion achieved even this lowered BQL cut off. There is no explanation given for the change in the BQL cut off score, other than none of the applicants made the BQL cut off score the two previous times the vacancy was announced. It must be noted that when making its decision the R&R panel has no knowledge of what the BQL cut off score will be. Even giving Plaintiff the benefit of the doubt that he was qualified for the job and a younger employee was selected, Defendant still argues that there was a legitimate business purpose for the selection of Jakubowski; that Jakubowski was better qualified, being the only applicant to make the BQL cut off score.

The Court finds that while Plaintiff may have made out a prima facie case, Defendant's legitimate nondiscriminatory reason for selecting Jakubowski (that he was the only applicant who made the BQL cut off) has merit. *See Woolery v. Brady*,741 F. Supp. 667, 670 (E.D.Mich. 1990). Even with the change in the BQL cut off score, Plaintiff must show that he was equally qualified by offering more than his own subjective opinions about his qualifications. *See Wrenn v. Gould*, 808 F.2d 493, 502 (6th Cir. 1987). Plaintiff has failed to show that Defendant's reason was mere pretext for intentional age discrimination. *Burzynski v. Cohen*, 264 F3d 611, 622 (6th Cir. 2001), *Gray v. Toshiba America Consumer Products, Inc*. 263 F.3d 595, 599(6th Cir. 2001). Plaintiff has failed to meet his burden of showing the actions of the Defendants were pretextual.

### C.     Vacancy Announcement B101-136CA

Five applicants made the BQL cut off score for Group Supervisor in the Ann Arbor office. Plaintiff and the selectee were among those interviewed by the Merit Promotion Board. The Board was made up of Alexander Paul, Anthony Torres, Pamela A. Potaczek, Peter M. McLouth and J. Dewey Webb. The Board selected John Felton, who was 42 years old at the time. Plaintiff was 52.

Here, Plaintiff makes the prima facie case, being a member of a protected group, having applied for and being qualified for the job, having not received the job and a younger person having been selected for the job. The legitimate business reason articulated by the Defendant for selecting Felton was that he was more qualified, based on his KSAs and experience. In addition, Felton was considered to have more headquarters experience. Other than the knowledge on the part of some members of the MPB that Plaintiff was "older", there is no evidence that Plaintiff's age was a factor considered in this promotion.

13

### D.        Vacancy Announcement B03-046

Plaintiff and four others qualified for the BQL for the position of Division Operation Officer in Detroit in 2003. The MPB interviewed all five candidates. Several members of the panel were themselves forty years of age or younger, including Gil Salinas, Adam Price and Nick Colucci. Plaintiff presents no evidence, except their youth, to support a claim that these individuals discriminated against him on the basis of age. Plaintiff argues that the panelists considered that Plaintiff would become their own competition for advancement and used that against him, but he presents nothing other than the bare allegation to support his claim.

Plaintiff again claims he was not given appropriate credit for his experience. In addition, Plaintiff claims that Price had a conflict of interest because he knew the selectee, George Krappman, who had been a Program Manager in Price's branch for 1 ½ years. Price also knew Gerald Woodward, another applicant. Price indicated that he informed the MPB of these conflicts and indicated to them that he could be fair and impartial. He testified that he did not try to influence any other panelists in favor of Krappman, but felt that Krappman had more experience in some areas, and outperformed Plaintiff on the interview, KSAs and other factors. Price also indicated Krappman knew the agency's mission better. Price did not give much credit to the "acting" positions Plaintiff had held indicating they were often just place-holding positions, without the responsibility of budget, management, or evaluation responsibilities. Price found Plaintiff to be "smug" but indicated that it was a close decision.

Plaintiff has made out the prima facie case for this vacancy announcement, but has failed to rebut Defendant's articulated legitimate business reason for not promoting him by showing it was pretext.

14

Throughout this case, Plaintiff has alleged that he was not given the proper credit for his experience in the military or his "acting" or temporary assignments and that "headquarters" experience was favored over other types of experience, even though there is no requirement for "headquarters" experience for promotion. None of this however, was sufficiently related to his claim for age discrimination. Plaintiff has failed to show how these issues relate to age (except insofar as his length of service might indicate his age group). The Rating and Ranking panels and the MPB have some leeway in how they credit experience, and  job responsibilities.

Plaintiff claims three types of circumstantial evidence   support his claim of age discrimination: (1) suspicious timing, ambiguous written or oral statements, behavior or comments directed at employees in the protected group and "other bits and pieces from which an inference of discriminatory intent might be drawn,"(Pl.'s Proposed Findings of Facts and Conclusions of Law at 7); citing *Giacoletto v Amax Zinc Co.*, 954 F.2d 424, 425-426 (7th Cir. 1992); *Holland v Jefferson National Life Ins. Co.*, 883 F.2d 1307,1314-15 (7th Cir. 1989); (2) evidence, even though "not rigorously statistical" of other employees "similarly situated...other than in the characteristic" claimed, such as age, "on which an employer is forbidden to base a difference in treatment received systematically better treatment."(Pl.'s Proposed Findings of Fact and Conclusions of Law at 8); citing American Nurses' Assoc. Of Illinois, 783 F2d 716, 728 (7th Cir. 1986); (3) evidence that a plaintiff was qualified but continually "passed over" in favor of younger person and the stated reason is "unworthy of belief". (*Id.*)

The Court finds that with respect to the first kind of evidence, Plaintiff has presented little evidence of suspicious timing, ambiguous statements or other "bits and pieces" that infer discrimination. As to the second kind of evidence, Plaintiff presented the testimony of Robert Scott

15

Parkhurst, a former ATF employee and leader of the Diversity Group for employees over 40 years old. He testified that he received a number of complaints of age discrimination including complaints of being passed over for jobs by younger employees. He even named three such individuals. However, he also testified that he knew personally six or so agents who were promoted who were forty-seven years old or older. The evidence clearly indicates that Plaintiff applied for a number of positions and was continually not selected despite seeking advice on preparing his application and interviewing skills. Yet, is it also clear that Plaintiff was not the only person not being selected, as other applicants in his and other age groups were also not selected. Plaintiff has failed to show that his failure to be promoted was motivated by age discrimination.

The Plaintiff, having failed to support his claims of age discrimination, the Court finds in favor of the Defendant, no cause of action.


 s/ DENISE PAGE HOOD
DENISE PAGE HOOD
United States District Judge


DATED September 30, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 30, 2005, by electronic and/or ordinary mail.

s/William F. Lewis
Case Manager

16